# No. 25-20024

---

In the United States Court of Appeals
for the Fifth Circuit

---

**KIMBERLY CUTCHALL; MICHAEL CUTCHALL,**
*Plaintiffs-Appellants,*

**v.**

**CHUBB LLOYD'S INSURANCE COMPANY OF TEXAS,**
*Defendant-Appellee.*

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CIVIL ACTION NO. 23-3745**

---

**APPELLANTS' BRIEF**

---

Peter M. Kelly
Texas State Bar No. 00791011
Ajay K. Ketkar
Texas State Bar No. 24102801
KELLY WATKINS MCPHEETERS LLP
1302 Waugh Drive, Box 596
Houston, Texas 77019
Telephone: 888.895.8335
Email: efile@texasappeals.com

George B. Murr
Texas State Bar No. 00794348
MURR LAW, P.L.L.C.
4101 Washington Ave
Houston, Texas 77007
Telephone: 713.588.2412
Email: mur@my-lawyers.com

**COUNSEL FOR APPELLANTS**

# No. 25-20024

In the United States Court of Appeals
for the Fifth Circuit

**KIMBERLY CUTCHALL; MICHAEL CUTCHALL,**
*Plaintiffs-Appellants,*

**v.**

**CHUBB LLOYD'S INSURANCE COMPANY OF TEXAS,**
*Defendant-Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CIVIL ACTION NO. 23-3745**

## CERTIFICATE OF INTERESTED PARTIES

Pursuant to Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Kimberly Cutchall
   ***Plaintiff-Appellant***

2. Michael Cutchall
   ***Plaintiff-Appellant***

3.  Peter M. Kelly
    Ajay Ketkar
    KELLY WATKINS MCPHEETERS LLP
    1302 Waugh Drive, Box 596
    Houston, Texas 77019
    ***Appellate Counsel for Plaintiffs-Appellants***

4.  George Murr
    MURR LAW, P.L.L.C.
    4101 Washington Ave
    Houston, Texas 77007
    ***Trial Counsel for Plaintiffs-Appellants***

5.  Raizner Slania L.L.P.
    2402 Dunlavy, Ste. 300
    Houston, Texas 77006
    ***Raizner Slania L.L.P. retains an interest in the attorney fees that may be received by Appellants and/or their counsel***

6.  Copperhead Claims, L.L.C.
    1924 Carol Lane
    Anna, Texas 75409
    ***Copperhead Claims, L.L.C. is the public adjuster and has an agreement with Appellants for payment of a fee based on any monetary recovery by Appellants***

7.  Chubb Lloyd's Insurance Company of Texas
    ***Defendant-Appellee***

8.  Karl A. Schulz
    COZEN O'CONNOR
    1221 McKinney Street, Suite 2900
    Houston, Texas 77010
    ***Counsel for Defendant-Appellee***

                                    */s/ Peter M. Kelly*
                                    Peter M. Kelly

## STATEMENT REGARDING ORAL ARGUMENT

Under Federal Rule of Appellate Procedure 34(a) and Fifth Circuit Rule 28.2.3, Appellants respectfully request oral argument as it may benefit the Court in deciding the issues presented on appeal. Appellants seek reversal of the district court based upon the application of Texas state law to the facts in this case, as well as reversible errors committed by the trial court rooted in misprision of the record. Oral argument will provide an important companion to this brief, and assist this Court in making its "Erie guess" about how the Texas Supreme Court would clarify insurance law governing concurrent causation.

### TABLE OF CONTENTS

Statement Regarding Oral Argument ................................................................. iii

Table of Contents ...........................................................................................iv

Table of Authorities.......................................................................................vii

Statement of Jurisdiction ................................................................................ 1

Statement of the Issues .................................................................................. 2

Statement of the Case .................................................................................... 3

I.    One year before the hail storm, Chubb gives the Cutchalls' 17-year-old home a clean bill of health. ................................................................3

II.   Chubb attempts to avoid its liability, but presents contradictory findings regarding causation of the damages.............................. 6

    A.    First Inspection: Chubb's experts overlook or ignore visible wind or hail damage. ........................................................ 6

    B.    Second Inspection: Chubb's adjuster identifies hail damage of more than $300,000 that Chubb's experts missed. ...................... 8

    C.    Third inspection: Chubb's experts try to save face by attempting to explain away their significant omissions. .................... 9

    D.    Chubb denies coverage for most of the Cutchalls' damages. .............10

Summary of Argument........................................................................... 11

Argument and Authorities ....................................................................12

I.    Standard of Review. ....................................................................12

II.   The Cutchalls' Policy covered the damage at issue. ....................................12

    A.    There is no dispute that hail is a covered peril under the Policy. ........................................................................ 13

B.    The Cutchalls' expert confirmed that the hail storm damage occurred on a specific date within the Policy period. ......................................................................... 14

III.    The "concurrent cause" doctrine does not apply. ...................................... 16

A.    The absence of an anti-concurrent cause provision in the Policy means that damage caused by a combination of covered and non-covered peril is not excluded. ................................. 16

B.    The concurrent cause doctrine applies to concurrent, not independent causes. ........................................................................ 17

C.    Under Texas law, deterioration and property conditions are independent causes, not concurrent causes—so this Court should either reject the district court's new rule, or certify the issue to the Texas Supreme Court for clarification. .................... 20

D.    There is a genuine issue of fact as to whether the conflicting causes were concurrent or independent. ........................................... 23

IV.    If the concurrent cause doctrine applies, the Cutchalls do not have the burden to segregate until the fact-finder determines that Chubb proved causation by a non-covered peril. .................................................... 24

A.    An insurer bears the burden of proof on policy exclusions, exceptions, and limitations to coverage. ........................................... 24

B.    Texas Supreme Court authority reflects the post-1991 burden of proof framework. ............................................................ 24

C.    There has been no fact-finding of causation by a non-covered peril. ................................................................................... 26

V.    Chubb already demonstrated a basis to segregate covered and non-covered losses. ........................................................................... 27

VI.    The Cutchalls have satisfied their burden to segregate. ............................. 28

A.    The reasonable basis standard is lenient, especially at summary judgment. ........................................................... 28

B.    Expert testimony that 100% of the damage was caused by a covered peril satisfies the reasonable basis standard. .........................29

C.    The Cutchalls' expert demonstrated that 100% of the damage was caused by a covered peril. ............................................. 31

VII.    Chubb is not entitled to summary judgment on the Cutchalls' extracontractual claims. ....................................................32

A.    If the breach of contract claim survives, so do the extracontractual claims. ....................................................32

B.    The *bona fide* dispute rule does not preclude the Cutchalls' claim for violations of Chapter 541. ....................................32

Conclusion & Prayer ............................................................. 36

Certificate of Compliance ....................................................... 37

Certificate of Service............................................................38

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Alcolac, Inc.*, 974 F.3d 540 (5th Cir. 2020) ................................. 12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986) .................................................................................................... 12, 27

*Bible Baptist Church v. Church Mut. Ins. Co.*, 2023 WL 1931912 (N.D. Tex. Jan. 18, 2023), *accepted by* 2023 WL 1931350 (N.D. Tex. Feb. 10, 2023) ................................................................................. 22

*Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC*, 892 F.3d 167 (5th Cir. 2018) ........................................................ 13

*Eye Assocs., P.C. v. IncomRx Sys. Ltd. Partnership*, 912 F.2d 23 (2d Cir. 1990) .............................................................................................. 27

*Fiess v. State Farm Lloyds*, 202 S.W.3d 744 (Tex.2006) .......................... 16

*Frymire Home Servs., Inc. v. Ohio Sec. Ins. Co.*, 12 F.4th 467 (5th Cir. 2021) .................................................................................................. 20

*Hahn v. United Fire and Cas. Co.*, No. 6:15-CV-00218, 2017 WL 1289024 (W.D. Tex. Apr. 6, 2017) ..................................................... 19

*Ironwood Bldg. II, Ltd. v. AXIS Surplus Ins. Co.*, No. 5:19-CV-00368, 2020 WL 1234641 (W.D. Tex. Mar. 13, 2020) ........................... 17, 18, 19

*J.P. Columbus Warehousing, Inc. v. United Fire & Cas. Co.*, No. 5:18-CV-00100, 2021 WL 799321 (S.D. Tex. Jan. 13, 2021) ............... 31

*JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597 (Tex. 2015) .................................................................................................... 16

*Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462 (Tex. 1998) .................................................................................................... 13, 16

*Kennett–Murray Corp. v. Bone*, 622 F.2d 887 (5th Cir. 1980) ................. 15

*Labourdette v. State Farm Lloyds*, No. 4:19-CV-2551, 2021 WL 2042974 (S.D. Tex. May 21, 2021) ........................................................ 30

*Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597 (Tex. 1993) .................. 20, 21, 28, 33

*Mass. Bond. & Ins. Co. v. Orkin Exterm. Co.*, 416 S.W.2d 396 (Tex. 1967) ...................................................................................................... 28

*Nasti v. State Farm Lloyds*, No. 4:13-CV-1413, 2015 WL 150468 (S.D. Tex. Jan. 9, 2015) ......................................................................... 29, 31

*Nat'l Screen Serv. Corp. v. Poster Exch., Inc.*, 305 F.2d 647 (5th Cir. 1962) .............................................................................................. 12

*Nautilus Ins. Co. v. Country Oaks Apartments, Ltd.*, 566 F.3d 452 (5th Cir. 2009) ......................................................................................... 16

*Overstreet v. Allstate Vehicle & Prop. Ins. Co.*, 34 F.4th 496 (5th Cir. 2022) .............................................................................................. 22

*Paulson v. Fire Ins. Exch.*, 393 S.W.2d 316 (Tex. 1965) ....................... 20, 21

*Presswood v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:16-CV-00958, 2017 WL 7051074 (E.D. Tex. Aug. 11, 2017) ........................................ 31

*Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388 (Tex. 2016) ...................... 13

*Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948 (5th Cir. 2009) ......................................................................................... 20

*Southland Lloyds Ins. Co. v. Cantu*, 399 S.W.3d 558 (Tex. App.— San Antonio 2011, pet. denied) ................................................................ 30

*State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42 (Tex. 1998) ...................................................................................................... 34

*State Farm Lloyds v. Nicolau*, 951 S.W.2d 444 (Tex. 1997) ................... 32, 33

*Summers v. Harris*, 573 F.2d 869 (5th Cir. 1978) .................................. 22

*Sustainable Modular Mgmt., Inc. v. Travelers Lloyds Ins. Co.*, No. 3:20-CV-1883-D, 2022 WL 2134022 (N.D. Tex. June 14, 2022) ................................................................................................30

*Telepak v. United Servs. Auto. Ass'n*, 887 S.W.2d 506 (Tex. App.—San Antonio 1994, writ denied) ................................................ 24

*Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160 (Tex. 1971) ............................... 21

*U.S. Fire Ins. Co. v. Lynd Co.*, 399 S.W.3d 206 (Tex. App.—San Antonio 2012, pet. denied) .............................................................29

*Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48 (Tex. 1997) .....................................33

*Utica Nat'l Ins. Co. v. American Indem. Co.*, 141 S.W.3d 198 (Tex. 2004) ...............................................................................25, 26

*Warehousing, Inc. v. United Fire & Cas. Co.*, No. 5:18-CV-100, 2021 WL 799321 (S.D. Tex. Jan. 13, 2021) ......................................... 28

*Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760 (Tex. App.—Fort Worth 2006, pet. denied) ............................................ 22

*Williams v. N. Am. Van Lines of Tex., Inc.*, 731 F.3d 367 (5th Cir. 2013) .................................................................................. 12

## Statutes

28 U.S.C. § 1291 .......................................................................................... 1

28 U.S.C. § 1332(a) ....................................................................................... 1

Tex. Ins. Code § 554.002............................................................................ 17, 24

## Other Authorities

*Concurrent*, Black's Law Dictionary (11th ed. 2019) ............................................ 20

*Peril*, Black's Law Dictionary (11th ed. 2019) .................................................... 20

## STATEMENT OF JURISDICTION

Appellants Kimberly and Michael Cutchall brought this suit in Texas state court on September 5, 2023 against Appellee Chubb Lloyd's Insurance Company of Texas ("Chubb"). ROA.25-40. Appellants alleged Chubb breached its insurance policy contract with Appellants, violated the Texas Insurance Code, and violated the Texas Deceptive Trade Practices Act. *Id.*

Appellee Chubb removed the suit to the United States District Court for the Southern District of Texas, Houston Division. ROA.12-55. The district court had subject matter jurisdiction over the matter pursuant to 28 U.S.C. § 1332(a), which permits removal of state court actions to federal district court where (1) there is complete diversity of citizenship between the parties and (2) the amount in controversy exceeds $75,000.00.

On December 31, 2024, the district court granted Appellee's motion for summary judgment and entered final judgment. ROA.3800-3819. Appellants timely filed a Notice of Appeal on January 24, 2025. ROA.3820-3838. This is a direct appeal from an entry of an order granting summary judgment on all claims in favor of Appellee Chubb. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Appellants proffered evidence that the cause of the damage to their home was a storm that occurred during the period they were covered by Chubb's insurance policy, but the district court ignored it.

2. The district court improperly applied the concurrent clause doctrine to deny coverage.

3. The district court erred in granting summary judgment on Appellants' bad faith claims because Appellants presented sufficient evidence that Appellee deliberately structured its property inspections to reach a predetermined conclusion denying coverage for Appellants' loss.

**STATEMENT OF THE CASE**

**I.    One year before the hail storm, Chubb gives the Cutchalls' 17-year-old home a clean bill of health.**

Appellants Kimberly and Michael Cutchall have lived at their home, located at 4535 Shetland Lane, Houston, Texas 77027 (the "Property" or "Home") for over 20 years. ROA.1964. The Home has been insured exclusively by Appellee Chubb since it was first built in 2003, with no lapse in coverage. *Id.*

There were two relevant policies that cover the time period at issue in this case. Both policies were labeled Policy No. 15054346-01 (the "Policy"), lasted a year, and were consecutive. The first was effective from May 29, 2020 to May 29, 2021, and the second was effective from May 29, 2021 to May 29, 2022. ROA.2476-2536; *see also* ROA.824-902.

The Policy contains the following relevant terms and conditions:

---

**SECTION I – PROPERTY COVERAGE**

We cover:

1. the dwelling on the **residence premises** shown on the declarations page including structures attached to the dwelling.

2. other structures on the **residence premises** set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection.

---

The total limit of liability for other structures is the limit of liability shown on the declarations page. This is additional insurance and does not reduce the Coverage A (Dwelling) limit of liability.

We do not cover other structures used for **business** purposes.

3. Wall to wall carpeting attached to a building on the residence premises.

**\*\*\*\***

## SECTION I – PERILS INSURED AGAINST

**COVERAGE A (DWELLING)** and **COVERAGE B (PERSONAL PROPERTY)** We insure against all risks of physical loss to the property described in Section I Property Coverage, Coverage A (Dwelling) and Coverage B (Personal Property) unless the loss is excluded in Section I Exclusions).

**\*\*\*\***

## SECTION I - EXCLUSIONS

i.   We do not cover loss caused by:

1) wear and tear, deterioration or loss caused by any quality in property that causes it to damage or destroy itself.

2) rust or rot.

3) dampness of atmosphere, extremes of temperature.

4) contamination.

5) rats, mice, termites, moths or other insects.

> This exclusion does not apply to loss caused by accidental discharge, leakage or overflow of water or steam from within a plumbing, heating or air conditioning system or household appliance. This includes the cost of tearing out and repairing any part of the building necessary to repair or replace the system or appliance.
>
> We do cover ensuing loss caused by the collapse of building or any part of the building, water damage or breakage of glass which is part of the building, if the loss would otherwise be covered under this policy.
>
> ****
>
> k.    We do not cover loss under Coverage A (Dwelling) caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.
>
> ROA.847-852; *see also* ROA.2501-2506 (emphasis in original).

In the years before the Cutchalls filed the insurance claim that forms the basis of this suit, Chubb conducted multiple inspections and/or appraisals of the property, including in 2012, 2015, 2018, and in June of 2020. ROA.1965; *see also* ROA.1970-1999. **During the June 2020 inspection, Chubb did not find any material defects, nor damage to the property, including the roof.** ROA.1970-1999; *see also* ROA.2007. **Chubb made no indication that the roof needed repair or replacement**. *Id.* There were no suggestions that there were any deficiencies in the

structure's ability to block the intrusion of water or moisture from the outside. ROA.1970-1999.

## II. Chubb attempts to avoid its liability, but presents contradictory findings regarding causation of the damages.

On September 7, 2021, the Cutchalls discovered water damage on the third floor of their Home. ROA.1965. Mrs. Cutchall observed warped flooring, water damage to the walls where they began to split at the seams, water marks in every ceiling of the first floor, and stagnant water in the crevices of light fixtures. *Id*. The Cutchalls had never seen this kind of damage to their Home before. ROA.1964-65.

In keeping with their contractual duties under the policy, the Cutchalls filed a claim with Chubb the same day. ROA.855; *see also* ROA.1965. Moreover, the Cutchalls fulfilled their duty to mitigate damage by immediately scheduling for a renovation company to inspect and remediate their Home. ROA.1965.

Chubb sent inspectors on three separate occasions: September 29, 2021, March 2, 2022, and April 14, 2022. Chubb's own adjuster identified hail damage during one of these inspections, agreeing with the Cutchalls' expert.

### A. First Inspection: Chubb's experts overlook or ignore visible wind or hail damage.

For the first inspection, Chubb retained Matthew Oestrike and Vu Lam from Nelson Forensics, and dispatched them to the Cutchalls' Home. ROA.919; *see also*

ROA.1966. The Cutchalls were present at this inspection. *Id*. Both Oestrike and Lam observed and documented the extensive water damage throughout the Home. ROA.916-941. There was no way to deny the existence of the water damage, but now they had to explain it away in a manner that would allow Chubb to limit its exposure.

Oestrike and Lam provided Chubb with a written report summarizing their findings and conclusions. ROA.916–941. Yet despite the undisputed fact that the Home had never sustained this type of damage in its 18 years of existence—and despite Chubb itself giving the Home a clean bill of health just one year earlier, in June 2020—Chubb's inspectors attributed the extensive damage not to a recent storm, but instead to supposed "as-built openings and/or deterioration of the underlayment/waterproofing layer over time, unrelated to a storm-created opening." ROA.937. In other words, Chubb blamed the sudden, unprecedented water intrusion on latent construction defects that had somehow caused no problems for nearly two decades and had gone entirely undetected in Chubb's own inspection the year before.

Moreover, while Chubb's inspectors expressly denied that wind or storms caused the damage, their report conspicuously said nothing about hail or whether hail damage was present on the Home. ROA.916–941; *see also* ROA.923. That omission is telling. By ignoring hail—a covered peril under the Policy—and instead

attributing the damage to construction defects or the property's condition, Chubb positioned itself to invoke the Policy's exclusions and thereby limit the scope of coverage. ROA.847–852; *see also* ROA.2501–2506.

**B.    Second Inspection: Chubb's adjuster identifies hail damage of more than $300,000 that Chubb's experts missed.**

A second inspection of the Property was conducted on March 2, 2022. ROA.1966. This inspection was attended by (1) Chubb's field adjuster, Timothy Boatman, (2) Steve Emmons, another expert from Chubb, as well as (3) public adjuster Nicholas Halliday, who the Cutchalls have designated as a non-retained expert. *Id.*

Halliday's findings reveal Oestrike and Lam's significant omissions and oversights. While Oestrike and Lam's first report was silent as to hail, and denied wind damage, Halliday's report was more thorough. ROA.2044-2103; *see also* ROA.2003-2005. Halliday made the following observations that day:

- Wind damage has loosened tiles on the roof, compromising the seal between tiles that would prevent water intrusion. ROA.2044-2103; *see also* ROA.2003-2005;

- There was visible, direct hail damage to the roof. ROA.2044-2103; *see also* ROA.2003-2005; and

- There was visible, direct hail damage to the gutters, windows, window screens, HVAC units, garage doors, fences, and vents, all of which corroborate hail damage to the roof. ROA.2044-2103; *see also* ROA.2003-2005; ROA.2055.

Boatman's observations contradicted Chubb's experts and corroborated the Cutchalls' expert. **Boatman corroborated Halliday's findings when he pointed out hail damage** on downspouts, HVAC units, and the garage door and told the Cutchalls that the damage to their home was "caused by storm, wind and hail damage." ROA.1966-1967. Chubb's experts, unable to deny Boatman's objective observations, concurred with Boatman's conclusions. *Id.*

Boatman issued his own report. In his report, Boatman stated "**if Chubb affords coverage**…**this job price is likely to skyrocket** and likely reach the [Cutchalls'] contractor's **estimate of 300k+**." ROA.3682 (emphasis added).

### C. Third inspection: Chubb's experts try to save face by attempting to explain away their significant omissions.

Boatman's observation of hail damage created a problem for Chubb: there was now an explanation for the $300,000+ worth of damages that was covered under the Policy. The solution? Have Oestrike and Lam issue a "supplemental" report to explain away conditions that Chubb's own employee observed, but that they, experts, on assignment from Chubb, missed.

Oestrike and Lam returned to the Home for a third inspection on April 14, 2022, and documented their observations in a supplemental report dated May 13, 2022. ROA.967–1032. This time, Chubb's experts hedged their conclusions. They opined that the water intrusion was not caused by hail (despite clear evidence of hail

damage), but added that, if hail had caused any damage, it was "most likely prior to 2020"—conveniently placing it outside the Policy period. ROA.979. Yet that assertion directly contradicts Chubb's own June 2020 inspection, which found no roof damage at all. In short, Oestrike and Lam's findings are incomplete, internally inconsistent, and reverse-engineered to support a predetermined denial of coverage.

### D.    Chubb denies coverage for most of the Cutchalls' damages.

On June 3, 2022, Chubb sent the Cutchalls a letter stating there was "no coverage for *a portion* of [the Cutchalls'] loss." ROA.1033 (emphasis added). That statement, by necessary implication, concedes that some portion of the loss was covered and was able to be segregated from the alleged non-covered loss. Yet despite this tacit acknowledgment, Chubb's letter did little more than rubber-stamp the findings of Oestrike and Lam, and entirely ignored Halliday's findings and Boatman's corroborating observations. ROA.1033–1037.

Chubb tendered a check to the Cutchalls for $27,385.81, less than 10% of the cost estimated by Boatman, their own employee. The record does not reflect that the Cutchalls ever cashed or deposited the check.

### SUMMARY OF ARGUMENT

The trial court granted summary judgment for Chubb on the Cutchalls' breach of contract claim on two bases: first, it found no evidence that the Cutchalls' claim was covered under the Policy; and second, because there was no basis to distinguish between covered and uncovered damages. ROA.3810. Both reasons are erroneous.

The Cutchalls submitted competent evidence that the hailstorm causing the damage occurred within the Policy period—yet the trial court's opinion never acknowledges, much less addresses, this evidence. Its failure to account for this material fact alone warrants reversal. The trial court's second rationale fares no better. It addressed an unsettled area of Texas law and incorrectly placed the burden to apportion covered and uncovered losses upon the Cutchalls. Particularly at the summary judgment stage, it was not the Cutchalls' obligation to disprove Chubb's exclusions or allocate damages among competing causes. And even if there was a burden to show a basis for segregation, that burden was fulfilled because Chubb demonstrated losses could be segregated because it offered only $27,000 to cover more than $300,000 worth of property damage. Because both grounds for summary judgment rest on a misapplication of the law and a disregard of the record, the judgment cannot stand.

ARGUMENT AND AUTHORITIES

## I.     Standard of Review.

The standard of review for the granting of summary judgment is de novo.

*Williams v. N. Am. Van Lines of Tex., Inc.*, 731 F.3d 367, 368-69 (5th Cir. 2013).

Summary judgment can be granted only if the record demonstrates that there

is no genuine issue of material fact and that the movant is entitled to judgment as a

matter of law. FED. R. CIV. P. 56(a). When determining whether there is a genuine

issue of material fact, the court must view the evidence in the light most favorable to

the non-movant and all reasonable inferences are made in the non-movant's favor.

*Adams v. Alcolac, Inc.*, 974 F.3d 540, 543 (5th Cir. 2020).

Summary judgment is improper merely where the court believes it unlikely

that the opposing party will prevail at trial. *Nat'l Screen Serv. Corp. v. Poster Exch.,

Inc.*, 305 F.2d 647, 651 (5th Cir. 1962). It is not a court's job to "weigh the evidence

and determine the truth of the matter but to determine whether there is a genuine

issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505,

2511.

## II.    The Cutchalls' Policy covered the damage at issue.

"In Texas, insurance policies are contracts subject to the rules of contract

construction." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC,*

892 F.3d 167, 170 (5th Cir. 2018); *see also Kelley-Coppedge, Inc. v. Highlands Ins. Co.*,

980 S.W.2d 462, 464 (Tex. 1998). To prevail on a claim for breach of an insurance

policy, the Cutchalls bear the burden of establishing the claim is covered by the

policy. *Id*. To prove coverage, the Cutchalls must establish that their damage is (1)

covered by the policy and (2) was incurred at a time covered by the policy. *Seger v.*

*Yorkshire Ins. Co.*, 503 S.W.3d 388, 400 (Tex. 2016).

### A.    There is no dispute that hail is a covered peril under the Policy.

As already mentioned, there are two relevant policies in this case. Both

policies are labeled Policy No. 15054346-01, lasted a year, and are consecutive. The

first was effective from 05/29/2020 to 05/29/2021, and the second was effective

from 05/29/2021 to 05/29/2022. ROA.2476-2536; *see also* ROA.824-902. There is

no meaningful distinction in the coverage afforded by the two policies.

The Policy states that it insures the Cutchalls "against ***all*** risks of physical

loss" to the Property "unless the loss is excluded in Section 1 Exclusions." ROA.851

(emphasis added); *see also* ROA.2505. While the number of exclusions is lengthy, the

only exclusion that concerns hail or wind is exclusion 1(c), which excludes loss

caused by windstorm or hail to outside structures like cloth awnings, greenhouses,

or satellite dishes. ROA.851-854; *see also* ROA.2505-2508. All of the damage at issue

in this case was to the Home, not outside structures. There is no dispute that damage from a hail storm is covered under the Policy.

> **B.  The Cutchalls' expert confirmed that the hail storm damage occurred on a specific date within the Policy period.**

The Cutchalls proffered evidence of the date of loss via an affidavit from their expert witness, public adjuster Nicholas Halliday. ROA.2000-2011. Halliday testified as follows:

> I researched the StormerSite database regarding hail storms that impacted the area of the Cutchall Property. I noted that on ***June 15, 2021***, there were six reports of hail in size up to one inch that impacted the area of the Cutchall Property.
>
> I also researched the database maintained by the NOAA, National Oceanic and Atmospheric Administration. I noted that there were four reports of hail in size up to one inch that impacted the area of the Cutchall Property.
>
> Both of these databases confirm that the Cutchall Property was damaged during the policy period.

ROA.2009 (emphasis added); *see also* ROA.2471-74 (StormerSite report); ROA.2475 (NOAA database).

Halliday's expert testimony is straightforward and unequivocal. Based on his analysis, the date of the hailstorm that damages the Cutchalls' home was June 15, 2021, within the time of the Policy. ROA.843.

The district court fails to acknowledge Halliday's direct statement. ROA.3800–3818. Instead, the court focused almost entirely on Chubb's evidence, departing from the proper summary judgment standard. Rather than viewing the evidence in the light most favorable to the non-movants, the court impermissibly assumed the role of fact-finder—weighing competing expert testimony and crediting Chubb's experts over the Cutchalls' on the question of the date of loss. This was error. At summary judgment, the court may not resolve credibility disputes or choose between competing experts; its role is limited to determining whether a genuine issue of material fact exists. *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980) ("the district court must not resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence."). The Cutchalls have provided expert testimony that the hail storm that caused damage to their house occurred during the time period covered by the Policy. Chubb's experts disagree. If there is any doubt whether a hail storm occurred within the Policy period, that is a question of fact for the jury to decide. This Court should reverse the opinion of the district court.

### III.    The "concurrent cause" doctrine does not apply.

The district court held that under the "concurrent cause" doctrine, the Cutchalls had to provide a means to segregate uncovered from covered damages, but failed to do so. But this doctrine does not apply here.

### A.    The absence of an anti-concurrent cause provision in the Policy means that damage caused by a combination of covered and non-covered peril is not excluded.

As already mentioned, Texas courts interpret insurance policies according to the rules of contract construction. *See supra*. In applying these rules, the primary concern is to ascertain the parties' intent as expressed in the language of the policy. *Kelley-Coppedge, Inc.*, 980 S.W.2d at 464. "[T]he parties' intent is governed by what they said, not by what they *intended* to say but did not." *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex.2006) (emphasis in original); *see also Nautilus Ins. Co. v. Country Oaks Apartments, Ltd.*, 566 F.3d 452, 455 (5th Cir. 2009).

Contract interpretation principles regarding the parties' intent are important because the Policy at issue does not contain an anti-concurrent causation provision. An anti-concurrent cause provision seeks to exclude coverage of any damage caused by both covered and non-covered peril. *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 607-08 (Tex. 2015).

Because the Policy does not have such a provision, Chubb cannot exclude damages just because the damages were partially caused by a non-covered peril. Instead, it must plead and prove any exception to, or exclusion of, coverage. TEX. INS. CODE § 554.002.

### B. The concurrent cause doctrine applies to concurrent, not independent causes.

Even if property conditions are "perils" within the purview of the concurrent cause doctrine, the doctrine applies only to perils that are ***concurrent***, not to perils that are ***independent*** of one another.

The Western District of Texas's opinion in *Ironwood Bldg. II, Ltd. v. AXIS Surplus Ins. Co.*, No. 5:19-CV-00368, 2020 WL 1234641, at *4 (W.D. Tex. Mar. 13, 2020), is illustrative of this principle. In that case, it was undisputed that in 2016, when Ironwood's office building was insured by Liberty Mutual, a storm damaged the roof. *Id.* at *1. Ironwood made a claim and Liberty made a payment based on the roofs ACV. *Id.* Ironwood chose not to repair the roof because "the building continued to function without any apparent water leakage." *Id.* In 2017, after the AXIS policy took effect, a tornado "severely damaged" the roof, "which immediately began to leak, causing extensive interior damage." *Id.* at *2. AXIS made an RCV payment on Ironwood's roof claim, but deducted the ACV payment Liberty had made after the 2016 storm. *Id.* at *2.

The parties cross-moved for partial summary judgment. *Id.* AXIS argued Ironwood was required to segregate the unrepaired roof damage caused by the 2016 storm from the new roof damage caused by the 2017 storm. *Id.* at *4. The parties also "spen[t] much time debating" nuances of RCV policies and whether the unrepaired damage from 2016 counted as depreciation. *Id.* at *3. But what these disputes largely missed, the court said, was that the record presented "a strikingly simple, and indeed genuine, dispute as to a material fact: which storm caused which damage, and without an answer to that question, is summary judgment appropriate?" *Id.*

The Western District denied AXIS's motion for summary judgment, reasoning:

> ***[T]the concurrent-cause doctrine limits recovery "only when the loss is caused by two concurrent causes instead of two independent causes[,]"*** and here, the Court has no basis to conclude that precisely $188,275 worth of damage was concurrently caused by both the 2016 and 2017 storms such that [Ironwood's] failure to segregate the costs allows [AXIS] to deduct that amount. Indeed, ***[Ironwood] has raised a fact issue as to whether the causes were independent*** by proffering evidence that the roof did not leak after the 2016 hailstorm but did leak after the 2017 tornado, to the point of requiring replacement. This may ultimately show that replacing the roof was necessary as a result of an entirely independent cause, the 2017 tornado. Did the 2017 damage subsume any 2016 damage such that the damage would have occurred even without the 2016 damage, meaning the two are independent? [AXIS] says it does not; [Ironwood] say[s] it does, and the record at this time does not resolve that dispute.

*Id.* (internal citations omitted; emphasis added). The court concluded:

> In sum, if the 2016 hailstorm and 2017 tornado combined to cause the damage such that they are concurrent causes, it is [Ironwood's] burden to segregate those damages. They have not done so. But if the damage resulting from the 2017 tornado would have happened regardless of the 2016 hailstorm, such that the two are independent, the concurrent-cause doctrine would not bar [Ironwood] from recovering the full contractual amount: the replacement cost.

*Id.* at *5. Thus, the record demonstrated "a genuine issue of material fact as to whether what damage, if any, was concurrent and what was independent." *Id.*

The Western District reached the same result in *Hahn v. United Fire and Cas. Co.*, No. 6:15-CV-00218, 2017 WL 1289024, at *8 (W.D. Tex. Apr. 6, 2017). There, United offered summary judgment evidence that faulty repairs created the loss, at least in part. *Id.* The court denied summary judgment because the insured "submit[ted] evidence in support of his assertion that all claimed loss was covered." *Id.* The court cited testimony from the insured's property manager that "prior to the storm, all past roof leaks had been sufficiently repaired, but that after the storm, the property began experiencing significant leaks in areas that had never leaked before – suggesting the leaks were caused by the storm alone." *Id.* Even though the insurer had some evidence to the contrary, it was not sufficient to support summary judgment. *Id.*

C.    **Under Texas law, deterioration and property conditions are independent causes, not concurrent causes—so this Court should either reject the district court's new rule, or certify the issue to the Texas Supreme Court for clarification.**

For decades, the Texas Supreme Court has recognized that "[w]hen covered and excluded *perils* combine to cause an injury, the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage." *Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597, 601 (Tex. 1993) (*citing Paulson v. Fire Ins. Exch.*, 393 S.W.2d 316, 319 (Tex. 1965)) (emphasis added).

The Court's use of the word "peril" is crucial to the analysis here. In the insurance context, a "peril" is "[t]he cause of a risk of loss to person or property; esp., the cause of a risk such as fire, accident, theft, forgery, earthquake, flood, or illness." *Peril*, Black's Law Dictionary (11th ed. 2019); *see Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 956 (5th Cir. 2009).

The classic example of the concurrent cause doctrine in first-party property insurance arises when a hurricane strikes and the covered peril of wind and the excluded peril of flood damage the insured property at the same time. *See Paulson*, 393 S.W.2d at 316–17; *Concurrent*, Black's Law Dictionary (11th ed. 2019) (defining *concurrent* as "[o]perating at the same time"); *see also Frymire Home Servs., Inc. v. Ohio Sec. Ins. Co.*, 12 F.4th 467, 471 n.3 (5th Cir. 2021) (noting that the "typical concurrent cause case" involves simultaneous perils such as hurricane wind and

water). Indeed, this is precisely the scenario the Texas Supreme Court addressed in *Paulson*, 393 S.W.2d at 316–17. In *Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 161–63 (Tex. 1971), the Court applied the doctrine where the insured property was damaged by a windstorm (covered) and then collapsed six days later after a heavy snowfall (excluded). And in *Lyons*, the insured claimed her home was damaged by wind (covered) while her insurer attributed the loss to foundation settling (excluded). *Lyons*, 866 S.W.2d at 598.

A property ***condition*** is another matter. A roof that is not newly constructed will, by its nature, exhibit signs of weathering, wear and tear, deterioration, and other age-related conditions due to exposure to the elements. These conditions, however, do not render the roof nonfunctional or mandate its replacement. Rather, they simply increase the roof's vulnerability to damage when subjected to a storm event.

The concurrent cause doctrine as described above and as applied in cases involving covered and non-covered perils—like *Paulson*, *McKillip*, and *Lyons*—remains black-letter law. The Texas Supreme Court has never held that the doctrine applies in cases like this one, where the insurer contends that the non-covered peril giving rise to the doctrine is a property condition such as wear and tear, age, lack of maintenance, and/or historical storm damage that did not affect the functionality of

the roof or directly cause the insured's loss. *See Overstreet v. Allstate Vehicle & Prop. Ins. Co.*, 34 F.4th 496, 498 (5th Cir. 2022).

This is unsurprising in light of the axiomatic principle, known as the fortuity doctrine, that "[i]nsurance is designed to protect against unknown, fortuitous risks, and fortuity is a requirement of all policies of insurance." *Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760, 766 (Tex. App.—Fort Worth 2006, pet. denied). An insured cannot insure against something that has already begun and which is known to have begun. *Summers v. Harris*, 573 F.2d 869, 872 (5th Cir. 1978).

Indeed, at least one court has explicitly held that wear and tear is not a "peril" that may be insured against, but rather a certainty, which cannot be insured against. *Bible Baptist Church v. Church Mut. Ins. Co.*, 2023 WL 1931912, at *5 (N.D. Tex. Jan. 18, 2023), *accepted by* 2023 WL 1931350 (N.D. Tex. Feb. 10, 2023) (denying insurer's motion for summary judgment predicated on concurrent causation doctrine finding that "Bible Baptist has met its burden of allocation" based on the declaration of its roofing contractor that roof required complete replacement based on storm within policy period rather than a prior storm outside the policy period). Because wear and tear, and other property conditions contemplated by exclusions to coverage cannot be insured against, they cannot be concurrent causes.

Chubb's position, adopted by the district court, is that wear and tear is a peril—a new rule that is alien to Texas law. The district court's "Erie guess" is incorrect. This court should either correct that error and remand this case for further proceedings under Texas law, or, to the extent this Court harbors any uncertainty, certify the issue to the Supreme Court of Texas for clarification.

### D.    There is a genuine issue of fact as to whether the conflicting causes were concurrent or independent.

The summary judgment evidence establishes that to the best of the Cutchalls' knowledge, their roof was in good working order and not defective as of June 2020. *See supra*. It was not until September 7, 2021, *after* the June 15, 2021 hail storm, that significant damage was sustained. Chubb knows this.

Even assuming that the concurrent cause doctrine can be expanded beyond its explicit terms to include property conditions within the definition of "peril," the summary judgment evidence regarding the functionality of the roof prior to the storm and after the storm demonstrates a fact issue with regard to whether covered and non-covered causes were concurrent or independent. This Court should reach the same conclusion that Western District did when presented with similar facts, arguments, and summary judgment evidence, and reverse the trial court's summary judgment.

**IV.    If the concurrent cause doctrine applies, the Cutchalls do not have the burden to segregate until the fact-finder determines that Chubb proved causation by a non-covered peril.**

Even assuming the concurrent cause doctrine can and does apply here, the duty to segregate is not triggered without a finding of fact regarding causation by a non-covered peril.

**A.    An insurer bears the burden of proof on policy exclusions, exceptions, and limitations to coverage.**

Prior to 1991, once an insurer pled an exclusion, exception, or limitation, the insured bore the burden of negating it. *See Telepak v. United Servs. Auto. Ass'n*, 887 S.W.2d 506, 507 (Tex. App.—San Antonio 1994, writ denied). But in 1991, the Texas legislature enacted what is now Chapter 554 of the Texas Insurance Code, effecting significant change to the landscape of Texas insurance law in that it placed the burden of proof at trial as to "any affirmative defense," including "language of exclusion" or an "exception to coverage" on the insurer, not the insured. Tex. Ins. Code § 554.002.

**B.    Texas Supreme Court authority reflects the post-1991 burden of proof framework.**

Concurrent cause cases decided by the Texas Supreme Court under the post-1991 framework are consistent with Section 554.002 because they hold that the concurrent cause doctrine and resultant segregation burden on the insured are not

triggered absent a causation determination by the factfinder. *See Utica Nat'l Ins. Co. v. American Indem. Co.*, 141 S.W.3d 198, 204-05 (Tex. 2004).

In *Utica*, an employee of a surgical center contaminated ampoules of fentanyl with Hepatitis C while stealing the drug for his personal use. A number of patients who received injections of the contaminated drug later tested positive for Hepatitis C and sued, among others, the anesthesiologist group that practiced at the surgical center. *Utica*, 141 S.W.3d at 200. They alleged the doctors were negligent both in failing to secure the fentanyl to prevent its contamination and in exposing the patients to the contaminated drugs. *Id.* After the case settled, the various malpractice and liability carriers set out to adjudicate who was responsible for what. *Id.*

Utica—the anesthesiologists' general liability carrier—argued it had no duty to indemnify based on the policy's professional services exclusion. *Id.* at 202. The Court recognized that because that policy "treats the professional services exclusion as an exception to coverage," **the carrier "bears the burden of proof** to establish that the exclusion applies." *Id.* (emphasis added). And, the Court explained that "**without a finding that the doctors did or did not breach a professional standard of care, we cannot determine whether this case involves concurrent causes.**" *Id.* (emphasis added). Continuing, the Court reasoned:

> **A determination by the finder of fact** that the infection was caused by the breach of a professional standard of care

- for example, a finding that the infection was caused by the doctors' negligent administration of the anesthetic - would negate Utica's duty to indemnify. If the **factfinder determines** that the center breached both professional and non-professional standards of care by failing to properly supervise Thomas and by exposing the plaintiffs to contaminated fentanyl, then the covered and excluded events would have concurrently caused the harm the plaintiffs suffered, and the exclusion would apply. If, however, the professional services were rendered with due care, then the exclusion would not apply.

*Id.* at 204-05 (emphasis added).

Although it was decided in the third-party context as opposed to first-party, the Texas Supreme Court's reasoning in *Utica* is nonetheless instructive. Notably, the Court emphasized that a "determination by the finder of fact" that the exclusion applied was necessary before the Court could even invoke the concurrent cause doctrine. *Id.* at 204. Under *Utica,* merely pleading the exclusion, or offering summary judgment evidence in support of the exclusion is not and cannot be enough to trigger the doctrine's application.

**C.    There has been no fact-finding of causation by a non-covered peril.**

The Insurance Code and Texas Supreme Court precedent are clear that unless and until there is a finding of causation, i.e., Chubb sustains its burden of proof on one or more Policy exclusions, the Cutchalls do not have a burden to segregate damages. At the summary judgment stage, no conclusive determination has been

made, nor can it, because the purpose of summary judgment is to engage in "issue finding," not "issue resolution." *Eye Assocs., P.C. v. IncomRx Sys. Ltd. Partnership*, 912 F.2d 23, 27 (2d Cir. 1990); *see also Anderson*, 477 U.S. at 249 ("…at the summary judgment stage the judge's function is not [themself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). Based on the evidence presented by the Cutchalls, there is a genuine issue of material fact as to what caused the extensive damage to the Cutchalls' Home, a hail and wind damaged roof, or wear and tear.

## V.     Chubb already demonstrated a basis to segregate covered and non-covered losses.

Even if the Cutchalls did have a burden to segregate covered and non-covered losses, that work was already done by Chubb when it offered only $27,285.81 for payment of "covered losses."

Even though Chubb disputed the Cutchalls' claim that all of the damage was caused by the hailstorm, Chubb conceded that at least some portion of the damage was covered by the policy. By offering to pay $27,285.81 for damage it deemed covered, Chubb conceded that there was damage caused by, at least in part, covered peril. Chubb is now estopped on appeal from arguing that the summary judgment record does not contain evidence that covered and non-covered damage cannot be segregated, because their June 3rd letter demonstrates that it can. ROA.1033–1037;

*see also Mass. Bond. & Ins. Co. v. Orkin Exterm. Co.*, 416 S.W.2d 396, 401 (Tex. 1967)

("…one is not permitted to disavow his conduct which induced another to act

detrimentally in reliance upon it.")

What remains in dispute, then, is not whether there is proof of segregated

damages, but rather the extent of the damage attributable to covered peril versus

natural wear and tear (which is excluded). In other words, Chubb's position was not

that the Policy provides no coverage at all—it agreed to pay for the damage it

concluded was caused by covered peril. Instead, it disputes the Cutchalls'

assessment of the amount of damage caused by hail as opposed to preexisting wear

or other non-covered peril. That is why the only real dispute left for resolution is a

factual one: what portion of the water and roof damage resulted from the hailstorm,

and what portion predated the storm as ordinary deterioration.

## VI.    The Cutchalls have satisfied their burden to segregate.

### A.    The reasonable basis standard is lenient, especially at summary judgment.

When it applies, the burden to segregate is light. *See J.P. Columbus*

*Warehousing, Inc. v. United Fire & Cas. Co.*, No. 5:18-CV-100, 2021 WL 799321, at

*8 (S.D. Tex. Jan. 13, 2021) (citing *Lyons*, 866 S.W.2d at 600–01). Courts have

recognized that allocation of damages is **almost always a fact question**; it is only

where the insured cannot produce any evidence at all with regard to allocation that

its claims are subject to summary judgment on that basis. *Id.* In its quest to surpass this low threshold, the insured is not required "to produce overwhelming evidence that would allow a jury to flawlessly segregate damages." *Fiess v. State Farm Lloyds*, 392 F.3d 802, 808 (5th Cir. 2004). The doctrine only requires the insured to provide a "reasonable basis" on which damages may be apportioned. *See Paulson*, 393 S.W.2d at 319. In fact, the insured is not even required to offer expert testimony on the issue. *See U.S. Fire Ins. Co. v. Lynd Co.*, 399 S.W.3d 206, 217 (Tex. App.—San Antonio 2012, pet. denied). Importantly, the allocation standard is even more lenient at summary judgment than it is following a jury verdict. *See Nasti v. State Farm Lloyds*, No. 4:13-CV-1413, 2015 WL 150468, at *3-4 (S.D. Tex. Jan. 9, 2015) ("Requiring such evidence of proportionate causation in terms of precise percentages for purposes of summary judgment…would be premature and introduce needless complication.").

### B. Expert testimony that 100% of the damage was caused by a covered peril satisfies the reasonable basis standard.

One federal district court recently laid out the analytical framework for the concurrent cause doctrine in the summary judgment context as follows:

> At the summary judgment stage, [the concurrent cause] doctrine plays out as follows. First, [a]n insurer moves for summary judgment, arguing that an insured cannot produce evidence to satisfy the insured's ultimate burden to allocate its covered loss from its non-covered loss.

> Then, the insured ... must produce evidence that the insured's alleged loss is covered. To satisfy this burden of production, the insured may present either: **(1) evidence that all the claimed loss resulted from a covered event** or (2) evidence that provides a jury a reasonable basis to segregate covered from non-covered loss.

*Labourdette v. State Farm Lloyds*, No. 4:19-CV-2551, 2021 WL 2042974, at *5 (S.D. Tex. May 21, 2021) (emphasis added). In *Labourdette*, State Farm argued that the insured's claimed loss was attributable to wear and tear. *Id*. at *5. The insured submitted an expert affidavit that attributed all of the claimed loss to a covered hail event. *Id*. The court denied summary judgment, finding that the insured satisfied its burden. *Id*. Critically, the court held that "the jury will not be required to 'guess what percentage of the damage was caused by the hailstorm; instead, the jury [will be faced with a] credibility question as between Labourdette and State Farm's witnesses.'" *Id*. (citing *Southland Lloyds Ins. Co. v. Cantu*, 399 S.W.3d 558, 576 (Tex. App.—San Antonio 2011, pet. denied)).

The analysis in Labourdette is consistent with the holdings of other federal courts that have found an insured satisfied the reasonable basis standard at summary judgment by attributing 100% of the damage to a covered peril. *See, e.g., Sustainable Modular Mgmt., Inc. v. Travelers Lloyds Ins. Co.*, No. 3:20-CV-1883-D, 2022 WL 2134022, at *15 (N.D. Tex. June 14, 2022); *Presswood v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:16-CV-00958, 2017 WL 7051074, at *4 (E.D. Tex. Aug. 11,

2017); *Nasti*, 2015 WL 150468, at \*4; *see also J.P. Columbus Warehousing, Inc. v. United Fire & Cas. Co.*, No. 5:18-CV-00100, 2021 WL 799321, at \*8 (S.D. Tex. Jan. 13, 2021).

### C. The Cutchalls' expert demonstrated that 100% of the damage was caused by a covered peril.

Halliday concluded that the Cutchalls' damages "were due to rainwater intrusion caused by high wind and hail damage to the roof of the Cutchall Property." ROA.2005. Halliday goes on to conclude that the damages "are not the result of other potential causes of loss. This includes normal wear and tear, any as-built openings in the roof, deterioration of the underlayment/waterproofing layer over time, and construction defects." *Id*. In order to rule out the non-covered causes, he reviewed the June 2020 report issued by Chubb itself and an appraisal report that contains the results of a September 2018 inspection of the Property. ROA.2005-2007.

By ruling out wear and tear and other non-covered causes, Halliday effectively concluded that 100% of the damage occurred during the Policy period and was caused by hail and wind.

## VII.    Chubb is not entitled to summary judgment on the Cutchalls' extracontractual claims.

### A.    If the breach of contract claim survives, so do the extracontractual claims.

The district court ruled that the Cutchalls' extracontractual claims could not stand because their breach of contract claim failed. However, the law and evidence show that the Cutchalls raised a genuine issue of material fact on their breach of contract claim, making it an issue only the jury can resolve. Accordingly, the district court erred in granting summary judgment on the extracontractual claims for that reason.

### B.    The *bona fide* dispute rule does not preclude the Cutchalls' claim for violations of Chapter 541.

Chubb alleged that there can be no breach of the duty of good faith and fair dealing because "this case presents at most a *bona fide* coverage dispute." ROA.815 (emphasis in original). First, the *bona fide* rule only applies if Chubb conducted a reasonable investigation. It did not. Second, even if the *bona fide* rule applies, it does not preclude liability for all violations of Chapter 541.

The Texas Supreme Court has emphasized that it "ha[s] never held that the mere fact that an insurer relies upon an expert's report to deny a claim automatically forecloses bad faith recovery as a matter of law." *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997). To the contrary, the Court has "repeatedly

acknowledged that an insurer's reliance upon an expert's report, standing alone, will not necessarily shield the carrier if there is evidence that the report was not objectively prepared or the insurer's reliance on the report was unreasonable." *Lyons*, 866 S.W.2d at 601; *Nat'l Union Fire Ins. Co. v. Dominguez*, 873 S.W.2d 373, 377 (Tex. 1994).

The same day it decided *Nicolau* in 1997, the Court decided *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997) and clarified the standard for recovery in common law bad faith cases, pronouncing that an insurer breaches the common law duty of good faith and fair dealing when it denies a claim even though it "knew or should have known that it was reasonably clear that the claim was covered." *Id.*; *see Nicolau*, 951 S.W.2d at 448 (recognizing that the prior standard imposed common law bad faith when an insurer denied a claim "with no reasonable basis"). One of the reasons for abandoning the existing "no reasonable basis" standard in favor of the "reasonably clear" standard, the Court said, was that the "reasonably clear" standard had the advantage of familiarity. *See Giles*, 950 S.W.2d at 55. The Texas Legislature had recently amended Article 21.21 (the predecessor statute to Chapter 541) to enumerate, as an unfair settlement practice, "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear," and applying the same standard

to the breach of the duty of good faith and fair dealing, the Court said, unified the common law and statutory bad faith standards. *Id*. at 55.

Importantly, the Court also recognized in *Giles* that common law bad faith liability is not limited to failure to attempt to resolve a claim in good faith once liability is reasonably clear. *Id*. at 56 n.5. The Court pointed out that "[a]n insurer will not escape liability merely by failing to investigate a claim so that it can contend that liability was never reasonably clear." *Id*.; *see also State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998) (citations omitted) ("an insurer cannot insulate itself from bad faith liability by investigating a claim in a manner calculated to construct a pretextual basis for denial"). Instead, the Court "reaffirm[ed] that **an insurance company may also breach its duty of good faith and fair dealing by failing to reasonably investigate a claim**." *Giles*, 950 S.W.2d at 56 n.5 (emphasis added); *see also Simmons*, 963 S.W.2d at 45 (finding that evidence of insurer's "outcome-oriented investigation" supported bad faith verdict).

Thus, *Giles* stands for the proposition that an insurer breaches the common law duty of good faith and fair dealing, i.e., acts in bad faith, when it denies a claim for which its liability was reasonably clear or fails to conduct a reasonable investigation of a claim. In other words, an insurer cannot manufacture a bona fide

coverage dispute by conducting an unreasonable investigation and then invoking the rule to shield itself from bad faith liability. *Giles*, 950 S.W.2d at 56, n.5.

The summary judgment record demonstrates a fact issue with regard to the reasonableness of Chubb's investigation, and therefore, the application of the bona fide dispute rule. It is solely the province of the jury to decide whether Chubb's investigation was unreasonable based on, among other things, (1) the June 2020 inspection, (2) Chubb's failure to include hail damage in its initial investigative report, (3) Chubb blaming the damage on non-covered risks like wear and tear, which supposedly did not exist one year before during the June 2020 inspection, (4) amending the report only after the Cutchalls' expert identified visible hail damage which was corroborated by Chubb's adjuster, (5) attributing the hail to storm events that occurred outside the Policy period in 2020, but were somehow missed during the June 2020 inspection[1].

The inconsistent and contradictory nature of Chubb's investigation and reports shows that Chubb's investigation was not conducted in good faith, but merely "outcome-oriented" to arrive at a predetermined conclusion so that it would not be liable for all of the damages caused by the hail or wind storm.

---

[1] Even if the hail storm occurred between May 29, 2020 and May 29, 2021, there was still a policy by Chubb insuring the Cutchalls' home during that time period. ROA.2476-2536.

## CONCLUSION & PRAYER

Appellants respectfully request that this Court vacate the district court's judgment and remand for further proceedings, along with any other relief to which they are entitled. In the alternative, Appellants ask that the question of the concurrent cause doctrine's scope and application be certified to the Texas Supreme Court, as detailed in their forthcoming Motion to Certify.

Respectfully submitted,

*/s/ Peter M. Kelly*
Peter M. Kelly
Texas State Bar No. 00791011
Ajay K. Ketkar
Texas State Bar No. 24102801
KELLY WATKINS MCPHEETERS LLP
1302 Waugh Drive, Box 596
Houston, Texas 77019
Telephone:  888.895.8335
Service: efile@texasappeals.com

**APPELLATE COUNSEL FOR APPELLEES**

*/s/ George B. Murr*
George B. Murr
Texas State Bar No. 00794348
MURR LAW, P.L.L.C.
4101 Washington Ave
Houston, Texas 77007
Telephone: 713.588.2412
Email: mur@my-lawyers.com

**TRIAL COUNSEL FOR APPELLEES**

### CERTIFICATE OF COMPLIANCE

I certify that this document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because it contains approximately 7,680 words, excluding parts exempted by rule and (2) this document complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Equity B with 12-point footnotes.

*/s/ Ajay K. Ketkar*
Ajay K. Ketkar

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on July 17, 2025, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

*/s/ Ajay K. Ketkar*
Ajay K. Ketkar